IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DORETHA R. SLOAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 07-2240-KHV-JTR |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

REPORT AND RECOMMENDATION

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act). Finding errors in the Commissioner's decision, the court recommends the decision be REVERSED and judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings.

I.   Background

Plaintiff's applications for DIB and SSI were denied initially and upon reconsideration. (R. 14, 33-34, 387-88). Plaintiff requested and was granted a hearing before an

Administrative Law Judge (ALJ).  (R. 14, 25-29, 44).  At the
hearing, plaintiff was represented by an attorney, and testimony
was taken from plaintiff and from a vocational expert.  (R. 14,
389-434).  On Nov. 13, 2006, the ALJ issued a decision finding
plaintiff is not disabled within the meaning of the Act, and
denying plaintiff's applications.  (R. 14-23).

        Specifically, the ALJ found that plaintiff has not engaged
in substantial gainful activity since her alleged onset date, and
has medically determinable "severe" impairments consisting of
disorders of the back and knee, and depression, but that
plaintiff's impairments do not meet or medically equal the
severity of an impairment listed in the Listing of Impairments.
(R. 15-16).  In assessing plaintiff's residual functional
capacity (RFC), the ALJ accorded "little weight" to the opinions
of plaintiff's treating physicians and social worker, and to the
opinions of the state agency medical consultants, and determined
that plaintiff's allegations of symptoms of disabling severity
are not credible.  (R. 19-20).  He determined plaintiff is able
to perform sedentary exertional work limited by certain physical,
mental, postural, and environmental restrictions.  (R. 20).  He
found that plaintiff is unable to perform her past relevant work,
but is able to perform a significant number of other jobs in the
economy such as work as a cashier, information clerk, and
surveillance system monitor.  (R. 21).  Consequently, he found

                              -2-

that plaintiff is not disabled within the meaning of the Act and denied her applications.  (R. 23).

Plaintiff disagreed with the decision and sought but was denied Appeals Council review.  (R. 5-8).  Therefore, the ALJ's decision is the final decision of the Commissioner.  (R. 5); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review.

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a preponderance, it is such evidence as a reasonable mind might accept to support a conclusion.  Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency."  White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Serv., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172

(10th Cir. 2005).  The determination of whether substantial
evidence supports the Commissioner's decision, however, is not
simply a quantitative exercise, for evidence is not substantial
if it is overwhelmed by other evidence or if it constitutes mere
conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d
222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual
can establish that she has a physical or mental impairment which
prevents her from engaging in substantial gainful activity and is
expected to result in death or to last for a continuous period of
at least twelve months.  42 U.S.C. § 423(d).  The claimant's
impairments must be of such severity that she is not only unable
to perform her past relevant work, but cannot, considering her
age, education, and work experience, engage in any other
substantial gainful work existing in the national economy.  Id.

The Commissioner has established a five-step sequential
process to evaluate whether a claimant is disabled.  20 C.F.R.
§§ 404.1520, 416.920 (2006); Allen v. Barnhart, 357 F.3d 1140,
1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination
can be made at any of the steps that a claimant is or is not
disabled, evaluation under a subsequent step is not necessary."
Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines
whether claimant has engaged in substantial gainful activity

-4-

since the alleged onset, whether she has severe impairments, and whether the severity of her impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Id. at 750-51.  If plaintiff's impairments do no meet or equal the severity of a listing, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520, 416.920.  This assessment is used at both step four and step five of the process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform her past relevant work, and whether she is able to perform other work in the national economy.  Williams, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show other jobs in the economy within plaintiff's capacity.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred (1) in evaluating the opinions of her treating physicians, of her treating social worker, and of the state agency medical consultants; (2) in assessing the credibility of plaintiff's allegations of symptoms; and (3) in considering plaintiff's obesity.  The Commissioner argues that the ALJ properly weighed the opinions of plaintiff's

treating medical sources and properly evaluated the credibility of plaintiff's allegations, and that the failure to find a "severe" impairment of obesity is harmless error because the ALJ's RFC assessment reflected limitations related to plaintiff's obesity.  The court will address each allegation of error in the order in which it would be reached in applying the sequential evaluation process.  Therefore, it begins with consideration of the ALJ's evaluation of obesity at step two.

**III. Obesity**

Plaintiff claims the ALJ failed to find plaintiff's obesity is a "severe" impairment within the meaning of the Act and the regulations, failed to consider obesity in combination with plaintiff's other impairments, and failed to assess the limitations resulting from obesity in combination with her other impairments.[1]  The Commissioner admits that plaintiff's obesity is "severe" within the meaning of the regulations, and that the ALJ erred in failing to make such a finding.  (Comm'r Br. 5-6).  However, he argues that the error is harmless because the ALJ's

---

[1]In her reply brief, plaintiff implies that the ALJ also failed to consider whether plaintiff's obesity or plaintiff's impairments in combination with obesity meet or equal the severity of a Listed impairment.  (Reply 5).  Ordinarily, this court will not review issues raised for the first time in a reply brief.  Nichols v. Comm'r, 260 F. Supp. 2d 1057, 1077 (D. Kan., 2003) (citing Stump v. Gates, 211 F.3d 527, 533 (10th Cir. 2000); and Sadeghi v. INS, 40 F.3d 1139, 1143 (10th Cir. 1994)).  Moreover, plaintiff points to no record evidence suggesting that plaintiff's obesity or plaintiff's impairments in combination with obesity meet or equal the criteria of any Listed impairment.

"residual functional capacity determination substantially reflected Plaintiff's credible limitations related to her obesity." Id. at 6.   The Commissioner set out his argument as follows:

> In this case, the ALJ's residual functional capacity determination reasonably accommodated Plaintiff's credible limitations that were related to her obesity. The ALJ found that Plaintiff could perform sedentary work, subject to certain nonexertional limitations. Sedentary work requires only minimal standing during the course of the workday, and the ALJ's residual functional capacity (RFC) finding gave Plaintiff the option to alternate between sitting and standing to relieve any discomfort she might experience.  According to Plaintiff, she could stand 30 to 60 minutes before needing to sit down.  Similarly, the RFC's restrictions against repetitive use of the feet, crawling, kneeling, and crouching took into account mobility limitations imposed not only by Plaintiff's obesity but also her co-morbid musculoskeletal complaints, including her knee problems.  While it would be easier for Plaintiff to work on level surfaces, the record showed she could still bend on occasion.  Contrary to Plaintiff's contentions that she had used an assistive device for ambulation for the past four years, the consultative examining physician noted on January 29, 2005 that Plaintiff's gait and station were stable and that she did not use an assistive device for ambulation.

(Comm'r Br. 5-6)(citations omitted).

The Commissioner's argument rests upon the assumption that sedentary work; minimal standing; alternate sitting and standing, restrictions against repetitive use of the feet, crawling, kneeling, and crouching; working on level surfaces; and an ability to bend occasionally accommodate all of the limitations related to plaintiff's obesity.  While the court might agree that the limitations reflected in the RFC assessed may relate in a

-7-

general sense to obesity or to individuals who are obese, the
Commissioner is charged with determining whether <u>plaintiff</u> is
disabled and, in particular, with evaluating <u>plaintiff's</u> RFC and
the limitations resulting from <u>plaintiff's</u> impairments--including
obesity.  Other than plaintiff's testimony (which the ALJ found
not credible) and the consultative examiner's finding that
plaintiff's gait and station are stable and that plaintiff does
not use an assistive device (which says little regarding
<u>limitations</u> related to obesity), the Commissioner's argument
points to no evidence or evaluation in the record which
specifically relates any of the assessed RFC limitations to
<u>plaintiff's</u> obesity.

Here, the only impairments specifically mentioned in the
decision were the ALJ's finding that plaintiff has "'severe'
impairments:  disorders of the back and knee and depression."
(R. 16).  The ALJ noted that "weight loss was advised" in the
report of the consultative examination performed on Jan. 29,
2005.  (R. 17, 18).  But, there is no mention of obesity in the
decision at issue.  In his step three analysis the ALJ found
"that claimant's additional impairments do not manifest
themselves to the degree of severity that would meet any of the
criteria described in the Listing of Impairments."  (R. 16).
There is no explanation of what is meant by the term "additional
impairments," and there is no discussion of any impairments other

than back and knee disorders, and depression.  The court is at a loss to understand the term used or to ascertain whether the ALJ acknowledged plaintiff's obesity or considered what effect it might have on plaintiff's abilities when considered in combination with plaintiff's other impairments.

Because the court is unable to determine the analysis made, if any, and because the decision does not specifically relate plaintiff's obesity to any of the assessed RFC limitations, the error in failing to evaluate obesity is not harmless, and remand is necessary for the Commissioner to properly evaluate plaintiff's obesity in the circumstances.

## IV.  Evaluation of Opinion Evidence

In her brief, plaintiff claims the ALJ erred, alternatively, in either failing to accord controlling weight to the opinions of plaintiff's treating physicians, or in failing to accord proper deference to the opinions of those physicians.  (Pl. Br. 14). Specifically, she argues that in a single paragraph the ALJ "summarily discounted" the opinions of plaintiff's treating medical sources, Dr. Sumulong,[2] Dr. Koduri, Dr. Katta, and Ms. McCulley, according "little weight" to those opinions without specific explanation of what portions of the opinions were rejected and what portions were accepted.  (Pl. Br. 14, 18).

---

[2]The ALJ refers to the opinion of "Marvin Simmons, M.D.," but the opinion referred to is that of plaintiff's primary care physician Dr. Marivic Sumulong.  (R. 379, 384, 182).

Plaintiff claims the error is compounded by the ALJ's decision to also accord "little weight" to the opinions of the state agency medical consultants, resulting in a situation in which the ALJ rejected every medical opinion of record yet assessed an RFC without explaining what medical evidence in the record supports the RFC assessed. (Pl. Br. 18). She argues that this fact, in light of the ALJ's comment at the hearing that plaintiff's doctors are wrong, reveals that the ALJ made speculative inferences and relied upon his own "credibility judgments, speculation or lay opinion." Id. at 18, & n.28(quoting McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002)). The Commissioner argues that the ALJ properly weighed the medical opinions, and cites to record evidence tending to support the decision to reject the opinions of the treating medical sources.

Plaintiff's argument that controlling weight should have been given to the opinions of the treating medical sources cannot be accepted. The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003). As plaintiff's argument implies, the ALJ must first determine whether to give a treating source opinion controlling weight. Id. 350 F.3d at 1300. In deciding the controlling weight question, the ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory

diagnostic techniques.'" <u>Id.</u> at 1300 (quoting <u>Soc. Sec. Ruling</u>
(SSR) 96-2p).  If the opinion is well-supported, the ALJ must
then determine whether the opinion is consistent with other
substantial evidence in the record.  <u>Id.</u> (citing 20 C.F.R.
§ 404.1527(d)(2) and SSR 96-2p).[3]  "[I]f the opinion is deficient
in either of these respects, then it is not entitled to
controlling weight."  <u>Id.</u>

The threshold for denying controlling weight is low.  The
ALJ need only find "such relevant evidence as a reasonable mind
would accept as adequate to support a conclusion that is contrary
to the conclusion expressed in the [treating source's] medical
opinion."  SSR 96-2, West's Soc. Sec. Reporting Serv., Rulings
113 (Supp. 2007).  Here, the RFC assessments of the state agency
medical consultants (R. 130-43)(that plaintiff is capable of a
range of light work and is only moderately limited in the
abilities to maintain attention and concentration for extended
periods and to interact appropriately with the general public) is
such relevant evidence which is inconsistent with the treating
medical sources' opinions and precludes the assignment of
controlling weight to those opinions.

---

[3]Both 20 C.F.R. § 404.1527(d)(2) and SSR 96-2p phrase the
second step of the inquiry in the negative:  an opinion may be
given controlling weight only if it is "<u>not inconsistent</u> with the
other substantial evidence" in the record.  20 C.F.R.
§ 404.1527(d)(2); <u>and</u> SSR 96-2p, West's Soc. Sec. Reporting
Serv., Rulings 112 (Supp. 2007)(emphasis added).

However, when the treating source opinion is not given controlling weight, the inquiry does not end. <u>Watkins</u>, 350 F.3d at 1300. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." <u>Id.</u> Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. <u>Id.</u> at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); <u>see also</u> <u>Drapeau v. Massanari</u>, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing <u>Goatcher v. Dep't of Health & Human Serv.</u>, 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. <u>Id.</u> 350 F.3d at 1301. When a treating physician's opinion is not given controlling weight, the ALJ must specify what lesser weight he assigned the treating physician's opinion. <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1083 (10th Cir. 2004). "Finally, if the

-12-

ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Watkins, 350 F.3d at 1301 (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

An administrative agency must give reasons for its decisions. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). (citing Reyes v. Bowen, 845 F.2d 242, 244 (10th Cir. 1988)). The record must demonstrate that the ALJ considered all of the evidence, but the ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects. Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).

Social Security Ruling 96-8p, however, includes specific narrative discussion requirements for an RFC assessment. West's Soc. Sec. Reporting Serv., Rulings 149 (2007). The discussion is to cite specific medical facts to describe how the evidence supports each conclusion, discuss how the plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform. Id. The discussion must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved. Id. If the ALJ's RFC assessment conflicts with a

medical source opinion, the ALJ must explain why he did not adopt the opinion.  Id. at 150.

As plaintiff argues, in a single paragraph the ALJ here accorded "little weight" to the opinions of each of plaintiff's treating medical sources,[4] but did not explain what portion of each opinion was rejected and what was accepted.  (R. 19).  Again as plaintiff argues, the ALJ accorded "little weight" to the opinions of the state agency medical consultants, but did not explain what portion of those opinions was rejected and what was accepted.  (R. 20).  The decision reveals no medical source opinion to which the ALJ accorded substantial weight.  Thus, the ALJ rejected substantial portions of all of the medical source opinions in this case record.  Yet, he did not explain what portions of the opinions were accepted and he did not explain how

---

[4]Ms. McCulley is a social worker who is a treating medical source but is not within the definition of an "acceptable medical source."  20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2); see also, 20 C.F.R. § 416.902("medical sources" are "acceptable medical sources or other health care providers who are not acceptable medical sources").  Therefore, she is not a "treating source" and her opinion is not a "medical opinion" which might be accorded "controlling weight."  §§ 404.1527, 416.927.  Nonetheless, as plaintiff argues and as the ALJ apparently recognized, the opinion of a treating social worker regarding functional effects and severity of impairments is important and should be evaluated upon the same regulatory factors as medical opinions are evaluated.  SSR 06-3p, West's Soc. Sec. Reporting Serv., Rulings 330-32 (Supp. 2007); see also, Frantz v. Astrue, 509 F.3d 1299, 1301-02 (10th Cir. 2007)(recognizing the procedure in SSR 06-3p for evaluating "other source" opinions).  Therefore, the court includes Ms. McCulley in its discussion here, since it has already determined no opinion can be accorded controlling weight.

he arrived at the RFC assessment made.  He did not provide a narrative discussion regarding the RFC assessment sufficient to allow this court to determine what evidence in the case record or what opinions, if any, support the RFC assessment.

The ALJ's evaluation of the opinions of the medical sources created an ambiguity regarding how the ALJ credited the opinions, but the ALJ did not resolve the ambiguity and the inconsistencies between the opinions as is required by SSR 96-8p.  In these circumstances, it appears that the ALJ merely formed his own lay opinion regarding plaintiff's capabilities and limitations and produced an RFC assessment based upon this opinion rather than the record evidence and the opinions of the medical sources.

While an RFC assessment is for the ALJ to make, he must base the RFC assessment upon the record evidence.  He may not form his own lay opinion regarding plaintiff's limitations and use that opinion to the exclusion of the medical opinions.  Winfrey v. Chater, 92 F.3d 1017, 1022 (10th Cir. 1996)(ALJ may not substitute his medical judgment for that of a physician); Kemp v. Bowen, 816 F.2d 1469, 1476 (10th Cir. 1987)(ALJ "can not interpose his own 'medical expertise' over that of a physician").

Moreover, the record indicates the ALJ believed that plaintiff's doctor was "wrong."  In her hearing testimony, plaintiff indicated that her doctor had recommended knee replacement surgery, but stated that plaintiff was too young for

such surgery.  (R. 402).  Later, the ALJ questioned plaintiff

regarding her knee.  (R. 414-15).  Plaintiff explained that the

cartilage had just worn off in that knee, and the ALJ questioned:

> Q [by ALJ]    Are you a [sic] athlete?
>
> A    No.
>
> Q    Okay.  Your doctor told you wrong.  You know why,
>      because I had a knee replacement.  You're not too
>      young.  Okay?
>
> A    I think, Judge, the real thing is I don't have the
>      right medical card.
>
> Q    Now the thing that may be keeping you from getting
>      a replacement is your weight.  They're not going
>      to put it in if you're too big

(R. 414-15).  As plaintiff explained, this incident reflects a

willingness by the ALJ to form an opinion based upon personal lay

experience and to substitute his lay opinion for that of the medical

sources.  This an ALJ may not do.

   The court does not intend to imply that each finding in the

RFC assessment must be based upon a specific opinion from a

medical source appearing in the record.  But, the RFC assessment

must be based upon record evidence.  The ALJ is responsible to

assess plaintiff's RFC.  20 C.F.R. §§ 404.1546, 416.946.  That

assessment must be based upon all of the relevant evidence in the

case record.  Id. §§ 404.1546(3), 416.946(3); SSR 96-8p West's

Soc. Sec. Reporting Serv., Rulings 147 (Supp. 2007).  And, the

ALJ must provide a narrative discussion describing how the

evidence supports each conclusion, explaining how any ambiguities

and material inconsistencies in the evidence were considered and
resolved, and, if the assessment conflicts with a medical source
opinion(s), explaining why the ALJ did not adopt the opinion(s).
SSR 96-8p West's Soc. Sec. Reporting Serv., Rulings 149-50 (Supp.
2007).  He may not merely form his own lay opinion, and
substitute that opinion for the medical source opinions.
McGoffin, 288 F.3d at 1252.  Remand is necessary for the
Commissioner to properly evaluate the medical source opinions,
explaining what portions of the opinions were accepted and what
portions were rejected; and provide a proper narrative discussion
describing how the evidence supports each RFC conclusion,
explaining how any ambiguities and material inconsistencies in
the evidence were considered and resolved, and, if the RFC
assessment conflicts with a medical source opinion(s), explaining
why the ALJ did not adopt the opinion(s).

## V.   Credibility Determination

Finally, plaintiff claims the ALJ incorrectly assessed
plaintiff's credibility, and alleges three specific errors in the
credibility determination.  (1) In finding plaintiff's
psychiatric progress notes "normal," "the ALJ did not closely and
affirmatively link Ms. Sloan's credibility to the substantial
evidence of record."  (Pl. Br. 20).  (2) The ALJ's finding that
there was no testimony or affidavits from third parties relating
to the duration, frequency, and intensity of plaintiff's

-17-

subjective complaints, is "patently false" because the medical source opinions constitute third-party statements. (Pl. Br. 20-21). And, (3) the ALJ's finding that plaintiff has a "sporadic work history" is erroneous because the record contains no detailed earnings record to support such a finding. (Pl. Br. 21). The Commissioner argues that an ALJ's credibility findings are to be considered binding upon the court unless there is "a conspicuous absence of credible evidence to support the ALJ's conclusion." (Comm'r Br. 11-12)(quoting Piatt v. Barnhart, 225 F. Supp. 2d 1278, 1292 (D. Kan. 2002)).

As the Commissioner argues, an ALJ's credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990). "Credibility determinations are peculiarly the province of the finder of fact." Diaz v. Sec'y of Health & Human Serv., 898 F.2d 774, 777 (10th Cir. 1990). Therefore, in reviewing the ALJ's credibility determinations, the court will usually "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility." Casias v. Sec'y of Health & Human Serv., 933 F.2d 799, 801 (10th Cir. 1991). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988).

Nonetheless, the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's credibility determination.  "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."  Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989) (quoting Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966)).  Therefore, where the ALJ has reached a reasonable conclusion that is supported by substantial evidence in the record, the court will not reweigh the evidence and reject that conclusion even if it might have reached a contrary conclusion in the first instance.

Plaintiff's argument that the ALJ erred in finding plaintiff's psychiatric progress notes were "normal" is without merit.  The ALJ explained his characterization in each case, and acknowledged portions which were "not normal."  (R. 17)("normal except for a euthymic mood," "normal except for a dysthymic mood and constricted affect," "normal except for a 'down' mood and constricted affect," "normal except for a worried mood and constricted affect," "normal except for a depressed mood, being close to tears and having slowed speech"); (R. 18)("normal except for a euthymic affect," "normal except for a depressed mood and slowed speech," "normal except for a euthymic mood and depressed speech").  The ALJ noted that each of these mental findings were

-19-

normal except with respect to mood and affect.  He summarized,
"The psychiatric progress notes of record were essentially normal
except for a disturbed mood and affect." (R. 18).  The only
evidentiary basis plaintiff provides to establish that the ALJ
erred is that the ALJ did not state what <u>plaintiff</u> had reported
to the nurse-practitioner at one visit, Mar. 25, 2005. (Pl. Br.
20)(citing R. 303).  The note to which plaintiff refers is clear,
however, that the negative "findings" are the report of
plaintiff, not the clinician's objective judgment regarding
plaintiff's condition.  (R. 303)("She reports" depression 8, "She
reports" energy down, "She reports explosive anger outbursts
daily").  While the record reveals that the ALJ might have
characterized at least one progress note differently, it does not
reveal that he was compelled to do so.  Because the record
supports the ALJ's characterization of the psychiatric progress
notes, the court will not find error in that characterization.

     The ALJ stated (as one of several findings in support of his
credibility determination) that the record contains "no testimony
or affidavits from third parties relating to the duration,
frequency and intensity of the claimant's subjective complaints."
(R. 19).  Plaintiff claims this statement is "patently false"
because the record contains third party statements provided by
medical sources:  Drs. Sumulong, Koduri, and Katta, and
therapists Ms. McCulley, and Ms. Comstock.

The statement contested by plaintiff appears to be a follow-up to the ALJ's earlier statement that he would consider several factors in evaluating the credibility of plaintiff's allegations. (R. 17).  Among the specific factors, the ALJ included "information and observations by treating and examining physicians and third parties relating to such matters as the duration, frequency and intensity of any pain." (R. 17).  The ALJ thereby distinguished between statements from medical sources and statements from "third parties."  As discussed above, the ALJ considered the medical source statements separately in the decision.  Therefore, it is not surprising that he also sought, and noted the absence of, third party statements in making his credibility determination.  The court will not require a redundant statement that the medical source opinions were considered in addition to seeking statements from "third parties."  Except where <u>required</u> by the Act, the regulations, or case law, the court will not insist that the ALJ apply a particular definition to terms used in his decision.[5]  The record does not reveal that the ALJ gave an inordinate amount of weight to the fact that the record contained no third party statements. He merely mentioned it as one of several factors he considered in

---

[5]As the Commissioner argues in his brief, the regulations require that symptoms be evaluated based upon the statements of plaintiff, treating or nontreating sources, and other persons. 20 C.F.R. §§ 404.1529(a)&(c), 416.929(a)&(c).

weighing plaintiff's allegations.   The court finds no error in that finding.

As the Commissioner admits, the record does not contain any evidence of a sporadic work history with below-average earnings. (Comm'r Br. 11).   He argues, however, that because the credibility determination is well-supported by other credibility factors, this error is harmless.   The court disagrees.

> Because a credibility assessment requires consideration
> of all the factors "in combination," [] when several of
> the factors relied upon by the ALJ are found to be
> unsupported or contradicted by the record, [a court is]
> precluded from weighing the remaining factors to
> determine whether they, in themselves, are sufficient
> to support the credibility determination.

Bakalarski v. Apfel, No. 97-1107, 1997 WL 748653, *3 (10th Cir. Dec. 3, 1997) (emphasis in original)(quoting Huston, 838 F.2d at 1132 n.7 (citation omitted)).   The court may not reweigh the evidence to determine whether plaintiff's allegations of disabling symptoms are credible.   Therefore, the Commissioner must perform this task on remand.

The court has determined that remand is necessary for the Commissioner to properly evaluate plaintiff's obesity; to properly evaluate the medical source opinions, explaining what portions of the opinions were accepted and what portions were rejected; and provide a proper narrative discussion describing how the evidence supports each RFC conclusion, explaining how any ambiguities and material inconsistencies in the evidence were

considered and resolved, and, if the RFC assessment conflicts with a medical source opinion(s), explaining why the ALJ did not adopt the opinion(s); and to properly evaluate plaintiff's allegations of disabling symptoms.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be REVERSED and that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  <u>Morales-Fernandez v. INS</u>, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 30th day of May 2008, at Wichita, Kansas.


s/John Thomas Reid
**JOHN THOMAS REID**
**United States Magistrate Judge**